UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| VICTOR GONZALEZ,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF HAMMOND,<br><br>Defendant. | CAUSE NO.: 2:17-CV-252-TLS |

**OPINION AND ORDER**

This matter is before the Court on the Defendant City of Hammond's Motion for Summary Judgment [ECF No. 25], filed on December 17, 2018. The Plaintiff Victor Gonzalez's Brief in Opposition to the Summary Judgment Motion [ECF No. 30] was filed on January 21, 2019. The Defendant filed its reply [ECF No. 31] on February 4, 2019. For the reasons stated below, the Court GRANTS the Defendant's Motion.

**FACTUAL BACKGROUND**

Plaintiff Victor Gonzalez is a Hispanic male and is over forty years old. Pl. Ex. 2 ¶¶ 1, 4, ECF No. 30-2. From 1997 until April 2016, the Plaintiff was employed by Defendant City of Hammond as an auto mechanic for the Hammond Police Department. *See id.* at ¶ 3. He states in his declaration that he was the only Hispanic mechanic and the oldest mechanic employed by the Defendant. *Id.* at ¶¶ 4–5. He testified that he had worked as an auto mechanic before working for the Defendant. Def. Ex. 5, 11:6–12:10, ECF No. 27-5.[1] He also testified that he did not think that race or age played a factor in his termination. *Id.* at 36:5–24. The Defendant's job posting for the Plaintiff's position required that "[t]he employee must regularly lift and/or move up to 10 pounds

---

[1] The Plaintiff and the Defendant both provided separate excerpts of the Plaintiff's deposition. The Court will indicate which excerpt it relies on.

and occasionally lift and/or move 100 pounds." Def. Ex. 1, Decl. Ex. 1, ECF No. 27-1. The Plaintiff could lift 100 pounds when the Defendant hired him. Def. Ex. 5, 15:2–3.

On October 20, 2011, the Plaintiff injured his knee while at work when a chair that he was standing on slid out from under him. Def. Ex. 1, Decl. Ex. 6, ECF No. 27-1. The Plaintiff reported this injury on October 25, 2011. *Id.* The Plaintiff suffered from an ankle sprain and a right knee sprain/contusion.[2] Def. Ex. 1, Decl. Ex. 7 (p. 45 of 445), ECF No. 27-1. His injury was covered by workers' compensation. Def. Ex. 1, ¶ 15. The Plaintiff's physicians placed him on temporary work restrictions that the Defendant accommodated. Def. Ex. 2, ¶ 6, ECF No. 27-2. In January 2012, the Plaintiff had surgery on his right knee. Def. Ex. 3, 3, ECF No 27-3. He was subsequently cleared to return to work with no restrictions. *Id.* at 4.

The Plaintiff suffered another injury on the job on March 27, 2013. Def. Ex. 1, Decl. Ex. 8, ECF No. 27-1. He injured his right knee when he stood up from a kneeling position. *Id.* He reported his injury to the Defendant on April 1, 2013. *Id.* He again received workers' compensation. *Id.* He returned to work, and the Defendant accommodated his temporary work restrictions. Def. Ex. 2, ¶ 17.

On November 12, 2014, the Plaintiff suffered an injury. Def. Ex. 1, Decl. Ex. 10, ECF No. 27-1. He reported the injury and his left knee swelling and pain to the Defendant on December 15, 2014. *Id.* Workers' compensation covered this injury.[3] Def. Ex. 1, ¶ 20. On January 29, 2015, the Plaintiff had left knee surgery. Def. Ex. 1, Decl. Ex. 7 (pp. 181–83 of 445). He was also diagnosed with osteoarthritis and degenerative joint disease. *Id.* (p. 182 of 445). The

---

[2] The Plaintiff testified that he injured his right ankle, not his left ankle. Pl. Ex. 1, 21:2, ECF No. 30-1. The Injury Report identifies the Plaintiff's left ankle as the ankle injured in 2011. Def. Ex. 1, Decl. Ex. 7 (p. 45 of 445).
[3] The Plaintiff avers that this injury was because of the 2013 accident. Pl. Ex. 2, ¶ 6.

Defendant accommodated the Plaintiff's temporary work restrictions arising from that injury. Def. Ex. 2, ¶ 8.

On January 15, 2016, the Plaintiff was issued a permanent work restriction of a 50-pound maximum with a 25-pound frequent lifting restriction and "[n]o kneeling and minimal squatting left knee." Def. Ex. 1, Decl. Ex. 11, ECF No. 27-1. The Defendant knew of the work restriction because workers' compensation reported the Plaintiff's progress. Def. Ex. 1, ¶¶ 16, 21. The Plaintiff also provided the Defendant with a copy of his permanent work restriction. Pl. Ex. 1, 26:8–16.

One of the Plaintiff's co-workers reported to the Defendant that the Plaintiff did not do many jobs because of his restrictions, including lift tires, work under the dashboard, push a vehicle in the shop, or "unload stock." Def. Ex. 6, Decl. Ex. 1, ECF No. 27-6. Another co-worker reported that the Plaintiff could not lift tires, balance tires, or crawl into the back of police SUVs. Def. Ex. 7, Decl. Ex. 1, ECF No. 27-7. Dan Miskus, who is in charge of the Defendant's garage, states in his declaration that the ability to lift heavy objects, "including occasionally lifting and/or moving 100 pounds is an essential function of the auto mechanic position." Def. Ex. 2, ¶ 5. He listed seven tasks that required an auto mechanic to lift between 50 and 100 pounds. *Id.* The Plaintiff testified that he could do "everything else" by himself except for installing tires. Pl. Ex. 1, 43:20–23. The Plaintiff states that he "had to seek assistance from coworkers when it came to handling or mounting tires." Pl. Ex 2, ¶ 9. He also states that he can complete five of the seven tasks Miskus listed, such as raising a vehicle with a hydraulic lift, disassembling vehicle units, and realigning brakes, without lifting over 50 pounds and violate his restrictions. *Id.* at ¶¶ 12–17. However, the Plaintiff admits that two tasks, "[r]emoving units such as the engine, transmission, or differential requires a lift or hoist," and installing tires are not possible with his

3

restrictions. *See id.* at ¶¶ 13, 18; Pl. Ex. 1, 43:20–23. He testified that other mechanics would work as a pair to install tires. Pl. Ex. 1, 44:3–6. The Defendant's Chief of Police states in his sworn declaration that the other two mechanics raised concerns about their increased workload because of the Plaintiff's workload. Def. Ex. 8, ¶ 6, ECF No. 27-8.

In April 2016, the Defendant offered the Plaintiff three alternate positions to accommodate his permanent work restrictions, but the Plaintiff declined the positions because he said he either could not perform them or was not qualified. *Id.* at ¶¶ 7–10. No other open positions were available. Def. Ex. 1, Decl. Ex. 12, ECF No. 27-1. On April 22, 2016, the Defendant terminated the Plaintiff's employment. *Id.*

The Plaintiff applied for Social Security Disability Insurance (SSDI). Pl. Ex. 1, 33:22–23. On July 15, 2016, he received notice from the Social Security Administration (SSA) that he became disabled on April 22, 2016. Pl. Ex. 1, Dep. Ex. 13.

## PROCEDURAL BACKGROUND

On October 11, 2016, the Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging the Defendant violated the Age Discrimination in Employment Act (ADEA), the Americans with Disabilities Act (ADA), and Title VII of the Civil Rights Act of 1964 (Title VII). *See* Compl. ¶ 11, ECF No. 1. On March 9, 2017, the EEOC issued the Plaintiff a notice of right to sue. *See id.* at ¶ 12. On June 5, 2017, the Plaintiff filed his Complaint alleging that the Defendant, by terminating his employment on April 22, 2016, violated the ADEA, the ADA, Title VII, 42 U.S.C. § 1981, and the Indiana Workers' Compensation Statute. *See id.* at ¶¶ 15, 23, 29, 35, 41.

## LEGAL STANDARD

4

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party has properly supported [its] motion, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). "To survive summary judgment, the nonmoving party must establish some genuine issue for trial such that a reasonable jury could return a verdict in [his] favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

Within this context, the Court must construe all facts and reasonable inferences from those facts in the light most favorable to the nonmoving party. *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550 (7th Cir. 2017). However, the nonmoving party "is only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture.'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citing *Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014)). Likewise, irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## ANALYSIS

The Plaintiff's Complaint alleges violations under the ADEA, the ADA, Title VII, 42 U.S.C. § 1981, and the Indiana Workers' Compensation Statute. The Defendant moves for summary judgment all the claims, each of which the Court considers in turn.

A.     The Americans with Disabilities Act

The ADA prohibits employers from discriminating against a "qualified individual" on the basis of his or her disability. 42 U.S.C. § 12112(a); *Rowlands v. United Parcel Serv. - Fort Wayne*, 901 F.3d 792, 798 (7th Cir. 2018) (citing *Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 241 (7th Cir. 2018)). "Discrimination under the ADA includes failing to make reasonable accommodations to a qualified employee's disability." *Rowlands*, 901 F.3d at 798 (citing *Rodrigo*, 879 F.3d at 241). The ADA defines a qualified individual as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

To prove a claim of disability discrimination, the Plaintiff "must show that: (1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by his disability." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017) (quoting *Roberts v. City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016)). The ADA requires proof of "but for" causation to satisfy the third element. *See A.H. ex rel. Holzmueller v. Ill. High Sch. Assoc.*, 881 F.3d 587, 593 (7th Cir. 2018).

On summary judgment, the test in a discrimination case is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). "Evidence must be considered "as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Id.* "A plaintiff may prove but-for causation either 'by introducing direct or circumstantial evidence that [his] employer took

an adverse action against [him] because of [his protected status]' or by invoking the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021) (quoting *Carson v. Lake County*, 865 F.3d 526, 532–33 (7th Cir. 2017)); *see also Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017) (noting that *McDonnell Douglas* burden-shifting analysis has not been displaced).

Under the burden-shifting framework, a plaintiff must first establish a prima facie case by showing that "(1) [he] is a member of a protected class, (2) [he] was meeting the defendant's legitimate expectations, (3) [he] suffered an adverse employment action, and (4) similarly situated employees who were not members of [his] protected class were treated more favorably." *Marnocha*, 986 F.3d at 718–19 (quoting *Carson*, 865 F.3d at 533). For an ADA claim, a plaintiff meets the first prong by showing that he is disabled under the ADA. *See Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 683 (7th Cir. 2014). If a plaintiff meets his burden, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. *Marnocha*, 986 F.3d at 719. If the employer does so, the burden shifts back to the plaintiff to prove that the employer's reason was pretextual. *Id.* In all cases, the question at summary judgment remains: "has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?" *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017);

The Defendant contends that summary judgment should be granted on the Plaintiff's ADA claim because he has, among other things, (1) failed to demonstrate that he is a qualified individual under the ADA, (2) failed to proffer a sufficient explanation to reconcile the contradiction he created by filing both a SSDI and an ADA claim, and (3) failed to prove, under

the *McDonnell Douglas* burden-shifting test, either the prima facie case of discrimination or that the Defendant's actions were pretextual. The Court agrees that the Plaintiff has failed to demonstrate that he is a qualified individual under the ADA. Thus, the Court need not consider the remaining arguments.

A qualified individual under the ADA "is someone who (1) satisfies the requisite skill, experience, education, and other job-related requirements of his employment position, and (2) can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Budde v. Kane Cnty. Forest Pres.*, 597 F.3d 860, 862 (7th Cir. 2010) (citing 29 C.F.R. § 1630.2(m)). Whether the Plaintiff satisfies the Defendant's legitimate selection criteria is not at issue on this motion. Rather, the Defendant argues that the Plaintiff is not a qualified individual because he is unable to perform the job's essential functions with or without reasonable accommodations. Specifically, the Defendant asserts that the Plaintiff is unable to lift up to 100 pounds with or without reasonable accommodations.

    a. Essential Functions

"The essential-function inquiry is a factual question, *not* a question of law." *Brown v. Smith*, 827 F.3d 609, 613 (7th Cir. 2016). When determining the essential functions of any particular job, "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description . . . for the job, this description shall be considered evidence of the essential functions of the job." *Bilinsky v. American Airlines, Inc.*, 928 F.3d 565, 569 (7th Cir. 2019) (quoting 42 U.S.C. § 12111(8)). Although a court must "look to see if the employer actually requires all employees in a particular position to perform the allegedly essential functions," the court should not "otherwise second-guess the employer's judgment in describing the essential requirements for the job." *Id.* at 570

(quoting *DePaoli v. Abbott Labs.*, 140 F.3d 668, 674 (7th Cir. 1998)). However, as the employer does not have an "'unfettered discretion to decide what is reasonable," the employer's judgment should only be considered an important, rather than a controlling, factor. *Id* (quoting *Miller v. Ill. Dep't of Transp.*, 643 F.3d 190, 198–99 (7th Cir. 2011)). In deciding the essential functions of a job, "a court may consider, but is not limited to, evidence of the employer's judgment of a position, written job descriptions prepared before advertising or interviewing applicants for the job, the work experience of past incumbents of the job, and the work experience of current incumbents in similar jobs." *Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir. 2001) (citing 29 C.F.R. § 1630.2(n)(3)). "[A]n essential function need not encompass the majority of an employee's time, or even a significant quantity of time, to be essential. Rather, an essential function must be a fundamental duty of the job." *Id.* at 929 (internal citations omitted).

The Plaintiff cannot show that he could perform the job's essential functions. The Plaintiff's job required that he be able to lift between 10 and 100 pounds. The Plaintiff was given a permanent work restriction of not lifting more than fifty pounds. Dan Miskus, who is in charge of the Defendant's garage, states in his declaration that the ability to lift heavy objects, "including occasionally lifting and/or moving 100 pounds is an essential function of the auto mechanic position." He lists seven tasks that require an auto mechanic to lift between 50 and 100 pounds. In his affidavit attached to his brief, the Plaintiff states that he "was able to perform all of the essential functions of my job, though I had to seek assistance from coworkers when it came to handling or mounting tires." He further admitted that he could not perform two of the seven listed task, specifically mounting tires or removing engines, transmissions, or differentials.

The Plaintiff's only argument is that lifting over 50 pounds was not in fact an essential function of his job. However, the Court will not second guess the Defendant's judgment in

deciding the essential functions for an auto mechanic. The Plaintiff admits that he cannot comply with the requirement to lift between 10 to 100 pounds because he has a permanent lifting restriction of no more than 50 pounds. The Plaintiff's conclusory statements that he was able to perform the essential functions of the job do not create a genuine issue of material fact. *See Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 843 (7th Cir. 1996). In *Miller v. Illinois Department of Transportation*, the Seventh Circuit held that summary judgment was inappropriate because the evidence of record showed that employees regularly "substitute and reassign tasks among themselves," which was evidence that being 25 feet up in the air was not an essential function of being a bridge maintenance crew. 643 F.3d at 199–200. Here, the Plaintiff avers that his co-workers "sometimes needed assistance mounting tires." That is insufficient to show that lifting 10 to 100 pounds was not an essential function of his job. Taken as true, the Plaintiff's affidavit and deposition testimony that he could not lift over fifty pounds, mount tires, or remove engines, transmissions, or differentials shows that the Plaintiff cannot perform the essential functions of his job.

    b. *Reasonable Accommodations*

The Plaintiff contends that the Defendant has offered no accommodation with regard to alternate employment. However, this is not true. A reasonable accommodation can include the reassignment to a vacant position. 42 U.S.C. § 12111(9)(B). The Defendant offered the Plaintiff three alternate jobs that the Plaintiff turned down. The Plaintiff bears the "burden to prove that there was a vacant position for which [he] was qualified." *Conners v. Wilkie*, 984 F.3d 1255,

1262 (7th Cir. 2021). The Plaintiff provided no additional information about vacant positions that he could have taken.

The Plaintiff argues that he can perform the essential functions of his job with reasonable accommodations, specifically that one of his co-workers can assist him when he must lift a heavy object. However, this is not a reasonable accommodation. *Peters v. City of Mauston*, 311 F.3d 835, 845 (2002) (holding that the request to have another person lift heavy weight "is unreasonable because it requires another person to perform an essential function of [the plaintiff's] job"); *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 534 (7th Cir. 2013) ("To have another employee perform a position's essential function, and to a certain extent perform the job for the employee, is not a reasonable accommodation.").[4] Because the Plaintiff cannot be an auto mechanic for the Defendant with a reasonable accommodation, he is not a qualified individual and cannot prevail on this claim either under the *McDonnell Douglas* burden-shifting method or when the evidence is viewed as a whole. The Court need not consider the Defendant's further arguments on the Plaintiff's ADA discrimination claim.

**B.    Age Discrimination in Employment Act**

The ADEA makes it unlawful for an employer to take adverse action against an employee who is forty years or older "because of such individual's age." 29 U.S.C. §§ 623(a)(1), 631(a). "To prevail on an age-discrimination claim, the plaintiff must prove that his age was the 'but-for' cause of the challenged job action." *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)). "In other words, under the ADEA 'it's not enough to show that age was *a* motivating factor. The plaintiff must

---

[4] In *Majors*, the Seventh Circuit, citing *Miller*, noted that "[c]ircumstances might exist when employees working in teams are able to share duties among themselves, so that such sharing might be a form of reasonable accommodation." 714 F.3d at 534 n.3. However, for the reasons discussed above, the Plaintiff has failed to present evidence to create a genuine dispute of material fact as to this issue.

11

prove that, but for his age, the adverse action would not have occurred.'" *Id.* (quoting *Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 455 (7th Cir. 2009)). ADEA claims are narrower than Title VII claims because an ADEA plaintiff may not recover under a mixed-motive discrimination theory. *Id.*

All of the evidence in an ADEA claim must be evaluated as a whole, and the *McDonnell Douglas* burden-shifting framework is one way to prove discrimination. *Id.* The Plaintiff seeks to survive summary judgment on his age discrimination claim under the *McDonnell Douglas* burden-shifting test. Under the burden-shifting framework, a plaintiff must show that "(1) [he] is a member of a protected class, (2) [he] was meeting the defendant's legitimate expectations, (3) [he] suffered an adverse employment action, and (4) similarly situated employees who were not members of [his] protected class were treated more favorably." *Marnocha*, 986 F.3d at 718–19 (quoting *Carson*, 865 F.3d at 533).

The Plaintiff cannot meet his burden on either the second or fourth prongs. First, the Plaintiff asserts in his brief that the employee who replaced him was younger than he was.[5] However, the Plaintiff provides no evidence of his co-workers' ages or the age of the person who replaced him. Second, the Plaintiff's job required that he be able to lift between 10 and 100 pounds, but the Plaintiff could not lift more than fifty pounds and could not install tires. Thus, the Plaintiff could not meet the Defendant's legitimate expectations for performing his job. He

---

[5] The Plaintiff's brief cites paragraph 20 of the Plaintiff's declaration for the proposition that the person who replaced the Plaintiff was younger than the Plaintiff. Pl. Br. 5, 11. However, there is no paragraph 20 in the Plaintiff's declaration, and nowhere in the declaration does the Plaintiff aver that the employee who replaced him was younger. *See* Pl. Ex. 2. In support, the Plaintiff also cites his deposition testimony, *see* Pl. Br. 5, but the cited deposition testimony provides only that he was replaced by "the son of one of the officers," Pl. Ex. 1, 35:21–36:2.

provides no other evidence that age discrimination occurred.⁶ Therefore, the Defendant is entitled to summary judgment on the Plaintiff's claim of age discrimination because he cannot prevail on this claim either under the *McDonnell Douglas* burden-shifting method or when the evidence is viewed as a whole.

**C.      Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981**

Under Title VII, it is unlawful for an employer "to . . . discharge any individual . . . because of such individual's race." 42 U.S.C. § 2000e-2. Under § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right . . .to the full and equal benefit of all laws . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Because claims of discrimination under Title VII and § 1981 are analyzed in the same manner, the Court will consider the Plaintiff's claims under § 1981 and Title VII together. *See Fields v. Bd. of Educ. of City of Chicago*, 928 F.3d 622, 625 (7th Cir. 2019). As with other discrimination claims, all the evidence in a race discrimination case must be evaluated as a whole, and the *McDonnell Douglas* burden-shifting framework is a valid way to prove discrimination. *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021).

The Plaintiff relies on the *McDonell Douglas* burden-shifting framework for these claims. Under this framework, the Plaintiff must make a prima facie showing of discrimination by

> establishing that (1) [he] is a member of a protected class, (2) [he] performed reasonably on the job in accord with her employer's legitimate expectations, (3) despite [his] reasonable performance, [he] was subjected to an adverse employment action, and (4) similarly situated employees outside of [his] protected class were treated more favorably by the employer.

---

⁶ The Plaintiff's deposition testimony was inconsistent on this issue. He testified that "[m]aybe" age was a factor in his termination but he "cannot affirm that it was based on [his] age" because he thought it was "[b]ased on his medical condition." Pl. Ex. 1 36:5–24.

*David*, 846 F.3d at 225 (quoting *Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 234 (7th Cir. 2014)) (internal quotation marks and alternations omitted).

Here, the Plaintiff cannot meet the prima facie case of racial discrimination on the second prong. As previously discussed, the Plaintiff cannot show that he was meeting the Defendant's legitimate expectations for the performance of his job because he could not lift the amount of weight required by the Defendant. The Defendant is entitled to summary judgment on the Plaintiff's Title VII and § 1981 race discrimination claims because the Plaintiff cannot prevail on this claim either under the *McDonnell Douglas* burden-shifting method or when the evidence is viewed as a whole.

**D.     Indiana Workers' Compensation Statute**

In *Frampton v. Central Indiana Gas Co.*, the Indiana Supreme Court held that "an employee who alleges he or she was retaliatorily discharged for filing a claim pursuant to the Indiana Workmen's Compensation Act . . . has stated a claim upon which relief can be granted." 260 Ind. 249, 253 (1973) (internal citation omitted). The Indiana Court of Appeals has developed a three-step approach to address *Frampton* claims alleging a retaliatory discharge for filing a workers' compensation claim. *Best Formed Plastics, LLC v. Shoun*, 51 N.E.3d 345, 351 (Ind. Ct. App. 2016). "First, the employee must prove, by a preponderance of the evidence, a prima facie case of discrimination" by presenting "evidence that directly or indirectly implies the necessary inference of causation between the filing of a worker's compensation claim and the termination." *Id.* (citing *Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1262 (Ind. Ct. App. 2002)). "Second, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the discharge." *Id.* (citing *Powdertech*, 776 N.E.2d at 1262). Third, "the employee then has the opportunity to prove that the reason cited by the employer is a pretext" by showing that the

reasons for termination are "(1) factually baseless; (2) not the actual motivation for his discharge; or (3) insufficient to motivate the discharge." *Id.* (citing *Powdertech*, 776 N.E.2d at 1261–62).

"To survive a motion for summary judgment in a *Frampton* case, an employee must show more than a filing of a worker's compensation claim and the discharge itself." *Powdertech,* 776 N.E.2d at 1262. "The employee must present evidence that directly or indirectly implies the necessary inference of causation between the filing of a worker's compensation claim and the termination, such as proximity in time or evidence that the employer's asserted lawful reason for discharge is a pretext." *Id.* That is, the Plaintiff must show "'rapidity and proximity in time' between the employee's filing for benefits and the discharge . . . or . . . evidence that the employer's proffered reason for the discharge is 'patently inconsistent with the evidence before the court.'" *Mack v. Great Dane Trailers*, 308 F.3d 776, 784 (7th Cir. 2002) (quoting *Markley Enters., Inc. v. Grover*, 716 N.E.2d 559, 565 (Ind. Ct. App. 1999)).

The Plaintiff presents no evidence that the Defendant fired the Plaintiff because he filed for workers' compensation. A lapse of a year between the filing for workers' compensation and termination does not create an inference of retaliation. *Goetzke v. Ferro Corp.*, 280 F.3d 766, 775 (7th Cir. 2002). In fact, a year-long lapse "tends to negate, rather than support, an inference of causation." *Mack*, 308 F.3d at 784 (citing *Goetze*, 280 F.3d at 775). Here, workers' compensation covered the Plaintiff's November 12, 2014 injury as well as his two previous injuries in 2011 and 2013. The Defendant terminated the Plaintiff's employment on April 22, 2016, after he was issued a permanent work restriction of lifting no more than 50 pounds. The Plaintiff presents no other evidence to support his claim that he was fired by the Defendant for filing a workers' compensation claim. The more than a year-long lapse in time negates, rather

15

than supports, an inference of causation. The Defendant is entitled to summary judgment on the Plaintiff's *Frampton* claim.

## CONCLUSION

For the forgoing reasons, the Court hereby GRANTS Defendant's Motion for Summary Judgment [ECF No. 25]. The Court DIRECTS the Clerk of Court to enter judgment in favor of the Defendant City of Hammond and against the Plaintiff Victor Gonzalez.

SO ORDERED on February 14, 2022.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT